*NLRB v. Kirin*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RLULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of July, two thousand twenty-six.

PRESENT:

> GUIDO CALABRESI,
> GERARD E. LYNCH,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

_____

NATIONAL LABOR RELATIONS BOARD,

*Petitioner*,

v.                                                    No. 25-391

KIRIN TRANSPORTATION, INC., d/b/a, Kirin Transportation,

*Respondent.*

_____

| | |
|---|---|
| **For Petitioner:** | ERIC WEITZ (Ruth E. Burdick, Kira Dellinger Vol, *on the brief*), Attorneys, *for* Crystal S. Carey, General Counsel for the National Labor Relations Board, Washington, D.C. |
| **For Respondent:** | KEVIN S. WANG, Wang & Associates, PLLC, Queens, NY. |

On application for enforcement of a December 16, 2024 decision and order of the National Labor Relations Board ("the Board").

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Board's application for enforcement is **GRANTED**.

The National Labor Relations Board petitions for enforcement of its decision and order finding that Kirin Transportation, Inc. ("Kirin") violated the National Labor Relations Act (the "Act") by discriminatorily "threatening, interrogating, suspending, and discharging" its employees after they sued for unpaid wages. App'x at 266. Kirin opposes that petition, arguing that (i) the record does not contain substantial evidence indicating that Kirin unlawfully retaliated against anyone; and (ii) most of the individuals in question were not Kirin employees, but

2

rather "independent contractors" excluded from the Act's coverage. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on review, to which we refer only as necessary to explain our decision.

Because our review of NLRB decisions is "limited," we will enforce the Board's order so long as "its legal conclusions are reasonably based, and its factual findings are supported by substantial evidence on the record as a whole." *HealthBridge Mgmt. v. NLRB*, 902 F.3d 37, 43 (2d Cir. 2018) (internal quotation marks omitted); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). A factual finding is supported by substantial evidence unless "no rational trier of fact" could reach the same conclusion. *HealthBridge*, 902 F.3d at 43 (internal quotation marks omitted). And we afford even greater deference to findings of fact based on witness-credibility determinations, which we will uphold unless the testimony is "hopelessly incredible" or the findings "'flatly contradict' either the 'law of nature' or 'undisputed documentary testimony.'" *NLRB v. Thalbo Corp.*,

171 F.3d 102, 112 (2d Cir. 1999) (quoting *NLRB v. American Geri-Care, Inc.*, 697 F.2d 56, 60 (2d Cir. 1982)).

I. **Substantial Evidence Supports the Board's Findings that Kirin Acted Unlawfully Towards Employee Qian Wang.**

The Board first determined that Kirin retaliated against Qian Wang by coercively interrogating, threatening, and eventually firing her after she sued for unpaid wages. Kirin disputes this finding, arguing that there is "no evidence" of any threats or coercion and that it would have discharged Qian Wang irrespective of her involvement in the suit. Kirin Br. at 5–7. We disagree.

The National Labor Relations Act protects the rights of employees to engage in "concerted activities" to improve their working conditions, 29 U.S.C. § 157, including by collectively filing suit for unpaid wages or discussing wage issues with their coworkers, *Cordua Rests.*, 368 NLRB No. 43, 2019 WL 3842331, at *4–5 & n.15 (Aug. 14, 2019) (citing cases), *enforced*, 985 F.3d 415 (5th Cir. 2021); *see also Socony Mobil Oil Co. v. NLRB*, 357 F.2d 662, 663–64 (2d Cir. 1966) (affirming that filing complaint constitutes statutorily protected conduct). Section 8(a)(1) of the Act expressly prohibits an employer from "interfer[ing] with, restrain[ing], or coerc[ing] employees" in the exercise of their statutory rights. 29 U.S.C. § 157(a)(1). Accordingly, an employer violates section 8(a)(1) if it (i) "coercive[ly]

4

interrogat[es]" employees about their statutorily protected activities, *NLRB v. Special Touch Home Care Servs.*, 566 F.3d 292, 301–02 (2d Cir. 2009); (ii) threatens employees for engaging in protected activities, *NLRB v. J. Coty Messenger Serv.*, 763 F.2d 92, 97–98 (2d Cir. 1994); or (iii) suspends or discharges employees for those activities, *NLRB v. Coca-Cola Bottling Co. of Buffalo*, 811 F.2d 82, 88–90 (2d Cir. 1987).

Here, substantial evidence supports the Board's finding that Kirin violated the Act by coercively interrogating, threatening, and then firing Qian Wang for filing a wage suit. *First*, Qian Wang testified that Nancy Song, Kirin's CEO, confronted her after Song became aware of the lawsuit, interrogating her about whether she had filed it and threatening to make Qian Wang and her family "pay" if she did not withdraw it. Suppl. App'x at 30. And Tiande Wang – Qian Wang's father who also worked for Kirin and had himself been interrogated and threatened by Song – corroborated his daughter's testimony. *Id.* at 61. While Kirin disputes that Song knew of the wage-and-hour lawsuit at the time of these alleged interrogations, the Administrative Law Judge, affirmed by the Board, found the testimony of the Wangs credible on this issue. App'x at 292. Because credibility determinations are the Board's "primary responsibility," *Am. Geri-Care*, 697 F.2d at 59, the Board was entitled to credit the testimony of both witnesses.

5

*Second*, the Board pointed to the circumstances surrounding Qian Wang's firing – including Kirin's related firings of other employees and the suspicious timing of the firing – to infer that Kirin had illicitly discharged Qian Wang *because* she had filed suit. App'x at 290–93. Such an inference is permitted where there is "circumstantial evidence," *Abbey's Transp. Serv. v. NLRB*, 837 F.2d 575, 579 (2d Cir. 1988), demonstrating that the "protected conduct was a motivating factor in the employer's decision to fire," *Bozzuto's Inc. v. NLRB*, 927 F.3d 672, 683 (2d Cir. 2019); *see also Consol. Bus Transit*, 350 NLRB 1064, 1065–66 (2007), *enforced*, 577 F.3d 467 (2d Cir. 2009) (discussing standard for unlawful discharge). That could include evidence that the employer had "knowledge" of the employees' protected activities, that the employer harbored "animus" toward those activities, or that the "timing of the discharge" followed shortly after the employee engaged in protected activities or the employer became aware of them. *Bozzuto's Inc.*, 927 F.3d at 683 (internal quotation marks omitted).

The record here amply supported the inference that Kirin fired Qian Wang because of her involvement in the suit. As demonstrated by Song's confrontation of Qian Wang, Kirin knew that Qian Wang had engaged in statutorily protected conduct. Suppl. App'x at 30. And Kirin expressed overt animus when Song

6

threatened to retaliate against Qian Wang and her father; warned other employees that they would not see "a penny" if they joined the litigation; and discharged Tiande Wang because he had "instigat[ed] the company's current and former employees to sue." *Id.* at 29–31, 196; App'x at 63. The inference that Kirin fired Qian Wang in retaliation for filing the lawsuit is also supported by the timing of the discharge, which occurred just one week after Song learned of the suit. Suppl. App'x at 160–62; *see NLRB v. S.E. Nichols, Inc.*, 862 F.2d 952, 957 (2d Cir. 1988) (affirming finding of animus based on "abruptness" of discharge and proximity in time to protected activities). Considered in tandem, this evidence easily sustains the Board's finding of unlawful discharge. *See Bozzuto's Inc.*, 927 F.3d at 683.

Nor did the Board err in rejecting Kirin's contention that it would have taken the same adverse employment action irrespective of Qian Wang's participation in protected activities. *See id.* As the Board noted, Kirin's defense – that it would have fired Qian Wang in any event because she had committed "misconduct," Kirin Br. at 5 – was flatly contradicted by Song's own testimony, in which she "sw[o]r[e]" that she "never" considered "terminat[ing] [Qian Wang's] employment" even after Qian Wang filed the lawsuit. App'x at 135 (denying that Song directed the termination of Qian Wang). That contradiction is particularly

7

fatal to Kirin's argument here because Song's testimony regarding Qian Wang's alleged misconduct constitutes the entirety of the record evidence that Kirin provided to justify Qian Wang's termination.

In sum, substantial evidence supports the Board's finding that Kirin violated the Act by coercively interrogating, threatening, and finally discharging Qian Wang for her participation in protected activities.

**II.    Substantial Evidence Supports the Board's Findings that Tiande Wang, Lu Yang, and Ya Xu Were Kirin Employees and that Kirin Acted Unlawfully Towards Them.**

Substantial evidence also supports the Board's findings that, in addition to retaliating against Qian Wang – the perceived ringleader of the wage-and-hour suit – Kirin also acted unlawfully toward Tiande Wang, Lu Yang, and Ya Xu. Kirin challenges these findings by arguing that (i) those individuals were "independent contractors" rather than employees – and that they are thereby excluded from the Act's protection – and (ii) even if they were protected employees, the Board's findings of unlawful conduct were not supported by substantial evidence. Kirin Br. at 22–50. We are not persuaded.

**A. Tiande Wang, Lu Yang, and Ya Xu are Protected Employees.**

Section 2(3) of the Act broadly defines a statutory "employee" but excludes "any individual having the status of an independent contractor." 29 U.S.C.

8

§ 152(3). In "distinguishing between employees and independent contractors," we "apply general agency principles." *NLRB v. United Ins. Co.*, 390 U.S. 254, 256 (1968). To do so, we look to the list of common-law factors enumerated in the Restatement (Second) of Agency. *Id.* at 258; *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 752 & n.31 (1989); *Hilton Int'l Co. v. NLRB*, 690 F.2d 318, 320–21 (2d Cir. 1982); *Atl. Opera, Inc.*, 372 NLRB No. 95, 2023 WL 4051664, at *2–3, *17 (June 13, 2023). Finally, when reviewing the Board's application of the common-law factors to a particular case, we may not "displace the Board's choice between two fairly conflicting views, even though [we] would justifiably have made a different choice had the matter been before [us] *de novo*." *United Ins.*, 390 U.S. at 260 (internal quotation marks omitted).

Here, the Board fairly concluded that drivers Tiande Wang, Yang, and Xu were employees of Kirin protected under the Act. While acknowledging that several considerations weighed in favor of independent-contractor status – including the fact that the employees used their personal vehicles for work – the Board determined that the overwhelming majority of the common-law factors favored a traditional employment relationship. Those included Kirin's extensive "control" over the "means and manner" of the employees' work, which it

9

exercised by dictating the times and locations of their pickups, monitoring their status throughout the workday, and prohibiting drivers from taking leave without permission; the "unilateral[]" method by which Kirin set drivers' rates and compensation; the fact that the drivers worked exclusively for Kirin and were hired on an "indefinite basis"; and the reality that the drivers' work was at the "core" of Kirin's existence as a transportation provider. App'x at 288; *see Herald Co. v. NLRB*, 444 F.2d 430, 434–35 (2d Cir. 1971) (discussing analogous common-law factors). We have previously affirmed the Board's finding of employee status based on analogous facts, *see, e.g.*, *Herald Co.*, 444 F.2d at 434–35, and they are more than sufficient to establish employee status here.

## B. Kirin Unlawfully Interrogated, Threatened, and Discharged Tiande Wang.

Having properly found that Tiande Wang was an employee of Kirin, the Board did not err in finding that Kirin violated section 8(a)(1) when Song confronted, and eventually discharged, Tiande Wang for engaging in protected activities. *First*, as noted above, Song interrogated Tiande Wang about his daughter Qian Wang's involvement in the suit and threatened him with reprisals if he did not convince her to "withdraw" it. Suppl. App'x at 61. *Second*, the Board found that Kirin retaliated against Tiande Wang for eventually joining the suit,

10

most obviously by suspending him – just one day after he joined. App'x at 292–93. As with Qian Wang's termination, the suspicious timing of Tiande Wang's suspension and eventual discharge bolsters the Board's finding that Kirin's decision was motivated by his involvement in the litigation. *See S.E. Nichols, Inc.*, 862 F.2d at 957. And if that were not enough, Kirin stated in its notice suspending Tiande Wang that it was doing so *because* he "deliberately instigat[ed] the company's current and former employees to sue." Suppl. App'x at 196. Given that blunt admission, the Board did not err in rejecting Kirin's defense that it would have suspended Tiande Wang in any event because he had engaged in various forms of "misconduct," *see* Kirin Br. at 28, which Kirin again failed to credibly document in the record.

## C. Kirin Unlawfully Discharged Lu Yang and Ya Xu.

Substantial evidence also supports the Board's findings that Kirin violated section 8(a)(1) by discharging drivers Yang and Xu in retaliation for their involvement in the wage litigation. App'x at 293; 29 U.S.C. § 158(a)(1). To begin, when Yang and Xu raised concerns about unpaid wages to Song in December 2020, Song warned them that they would never see "a single penny" if they joined the Wangs' lawsuit. Suppl. App'x at 88, 105. Undeterred, Yang and Xu filed to join the suit – and were discharged without explanation just one week later. *Id.* at 89–

11

90. Given Song's warning not to join the suit, Kirin's parallel discharges of Qian and Tiande Wang, the near-immediate discharges of Yang and Xu, and Kirin's failure to provide any explanation for the firings, the Board, again, reasonably inferred a retaliatory motive. *See Consol. Bus Transit, Inc.*, 577 F.3d at 467.

For its part, Kirin does not even argue that it would have fired Yang or Xu irrespective of the protected activity. Instead, Kirin asserts that Xu "never" worked for the company and therefore could not have been unlawfully discharged. Kirin Br. at 12, 17, 38. But that directly contradicts evidence in the record showing that Kirin assigned Xu work and listed her as a driver in its personnel roll. App'x 382–406, Suppl. App'x at 216–17. And at multiple points, counsel for Kirin conceded that Xu worked for Kirin as a driver. *See, e.g.*, Kirin Br. at 9 ("[Ya Xu] was a driver of Respondent Kirin."). Kirin's contrary contentions on appeal are therefore without merit.

Finally, Kirin asserts that Yang and Xu "voluntarily" left their employment. *Id.* at 7, 29, 30, 31. But Kirin provides no record support for this conclusory assertion, so it has failed to preserve the issue for our review. *United States v. Apple*, 791 F.3d 290, 338 n.26 (2d. Cir. 2015) (declining to consider an argument to which a party "devoted only two conclusory sentences"). Moreover, Kirin's contention

was contradicted by the testimony of Yang and Xu, who emphatically denied that they had voluntarily ended their employment with Kirin. We have no reason to question the Board's decision to credit Yang's and Xu's testimony, which was neither "hopelessly incredible" nor "flatly contradict[ed]" by the "law of nature" or "undisputed documentary testimony." *Thalbo Corp.*, 171 F.3d at 112 (internal quotation marks omitted).

\* \* \*

We have considered Kirin's remaining arguments and find them to be without merit. Accordingly, the application for enforcement is **GRANTED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13